UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRA RODRIGUEZ, an individual; AL ALLAL, an individual,<br><br>                                    Plaintiffs,<br><br>v.<br><br>PROFIT SHARING PLAN II ADMINISTRATIVE COMMITTEE (a business entity form unknown), AS PLAN ADMINISTRATOR OF THE TORRENCE'S FARM IMPLEMENTS PROFIT SHARING PLAN II; KIRK HESTER; KIMBERLY HESTER-WAKE; and DOES 1 through 10, inclusive,<br><br>                                    Defendants. | Case No.: 23-CV-2236 JLS (JLB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>(ECF No. 21) |

Presently before the Court is Defendants PROFIT SHARING PLAN II ADMINISTRATIVE COMMITTEE (the "Committee"), Kirk Hester ("Hester"), and Kimberly Hester-Wake's ("Hester-Wake") (collectively, "Defendants") Motion to Dismiss Portions of Plaintiffs' First Amended Complaint ("Mot.," ECF No. 21) and Memorandum of Points and Authorities ("Mem.," ECF No. 21-1) in support thereof. Plaintiffs Alejandra Rodriguez ("Rodriguez") and Al Allal ("Allal") (collectively, "Plaintiffs") filed an Opposition ("Opp'n," ECF No. 22) to the Motion, to which Defendants filed a Reply ("Reply," ECF No. 25). The Court then took the Motion under submission without oral argument on March 14, 2024. ECF No. 23. Having carefully considered the First

Amended Complaint ("FAC," ECF No. 18), the Parties' submissions, and the law, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion.

## BACKGROUND

In this case, two former employees accuse the administrator of their employee benefit plan of failing to comply with the federal Employee Retirement Income Security Act ("ERISA").

Until March 2020, Rodriguez and Allal worked for Torrence's Farm Implements ("Torrence's Farm"), a privately held California corporation that sold and maintained tractors until it ceased operations following its acquisition by a competitor. FAC ¶¶ 4–6. While employed at Torrence's Farm, both Rodriguez and Allal enrolled in the "TORRENCE'S FARM IMPLEMENTS PROFIT SHARING PLAN II (the "Plan"), which provides retirement benefits "funded through discretionary contributions by" Torrence's Farm. *Id.* ¶¶ 6, 10–12.[1]  The Plan designates the Committee as its administrator, and Hester and Hester-Wake served (at least, at one time) as (1) officers, directors, or employees of Torrence's Farm and (2) individual members of the Committee. *Id.* ¶¶ 6–8.

Plaintiffs' accusations focus on three actions Defendants allegedly failed to complete. First, the provision of required annual statements. Plaintiffs contend that because the Plan (1) provides them each with their own account but (2) does not allow them to direct the investment of account assets, the Committee must provide them "a pension benefit statement at least once each calendar year" pursuant to 29 U.S.C. § 1025(a). *Id.* ¶ 24. Defendants, however, have not provided either Plaintiff with a pension benefit statement since 2017. *Id.* ¶¶ 15, 20, 25.

Second, responses to requests for information. Hester allegedly informed Rodriguez in early 2020 that the Plan "would be paying out all of the vested profits-sharing money in April of that year." *Id.* ¶ 16. On March 27, Rodriguez then requested "her Profit-Sharing

---

[1] Rodriguez joined the Plan in 2001. FAC ¶¶ 13–14. Allal, by contrast, joined the plan in 1996, received a full payout of his vested pension in 2018, but nevertheless continued to participate in the plan until 2020. *Id.* ¶¶ 19–20.

Statements" from Hester and Hester-Wake, who informed her they would provide "an update the following week." *Id.* ¶ 17. This story repeated on April 9, when Rodriguez again requested her profit-sharing statements and again secured the promise of an update. *Id.* In May, however, radio silence commenced. Hester and Hester-Wake ignored emails from Rodriguez "requesting her account statements" on May 11, 19, and 25. *Id.*

Approximately two years passed, apparently without action from either side. *Id.* ¶ 18. Then, Rodriguez asked her financial advisor Greg Kolodi ("Kolodi") to secure her pension benefit statements. *Id.* "From March to May 2022, . . . Kolodi made numerous requests and demands for information from . . . Defendants, but no information was ever provided." *Id.* Per Rodriguez, Defendants were required, again by 29 U.S.C. § 1025, to provide her with the pension benefit statements upon request. *Id.* ¶ 28.

Finally, a decision on Rodriguez's loan request. Plaintiffs allege that, "[p]ursuant to the terms of the Plan," beneficiaries may obtain a loan upon written request. *Id.* ¶ 34. In need of funds for her daughter's medical care, Rodriguez "submitted a loan application to" Hester and Hester-Wake on September 10, 2019. *Id.* Defendants, however, never responded to the request. *Id.* ¶ 35. Plaintiffs contend this failure violates 29 U.S.C. § 1133. *Id.*

Plaintiffs filed this action in the Central District of California on October 6, 2023. ECF No. 1. The Parties stipulated to transfer to this District on December 6, 2023, and the case fell to the undersigned the next day. ECF Nos. 14, 17. Plaintiffs then filed the FAC on January 19, 2024. In it, Plaintiffs bring three causes of action: (1) failure to provide account statements pursuant to 29 U.S.C. §§ 1132(c), 1025(a); (2) failure to provide requested documents pursuant to 29 U.S.C. §§ 1132(c), 1025(a); and (3) failure to respond to a request for benefits as required by 29 U.S.C. § 1133. FAC at 7–9. They seek statutory damages of $100 per day since October 6, 2020, under their first cause of action and $100 per day since March 27, 2020, under their second. *Id.* at 10. They also request an order requiring Defendants to (1) provide yearly benefit statements to both Plaintiffs and (2) review Rodriguez's request for a loan and award her all benefits due. *Id.* Finally, Plaintiffs

23-CV-2236 JLS (JLB)

hope to recoup reasonable attorney's fees and costs.  *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted."  A court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Facts "'merely consistent with' a defendant's liability" do not demonstrate a plausible entitlement to relief.  *Id.* (quoting *Twombly*, 550 U.S. at 557).

Review under Rule 8(a) requires a context-specific analysis involving a court's "judicial experience and common sense."  *Id.* at 679.  A court must "accept[] all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party."  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).  That said, the Court need not accept as true "legal conclusions" contained in the complaint.  *Iqbal*, 556 U.S. at 678.

23-CV-2236 JLS (JLB)

If a complaint does not state a plausible claim for relief, a court should grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading could . . . cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "The Ninth Circuit has instructed that the policy favoring amendments 'is to be applied with extreme liberality.'" *Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 155 (N.D. Cal. 2005) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

## DISCUSSION

Defendants' Motion targets Plaintiffs' second and third causes of action. Defendants first contend Plaintiffs' second claim (1) is untimely, (2) improperly relies on requests made by third parties, (3) duplicates Plaintiffs' first claim, and (4) impermissibly targets Hester and Hester-Wake. Turning to Plaintiffs' third claim, Defendants argue 29 U.S.C. § 1133 does not contain a private right of action. In the alternative, Defendants suggest (1) Rodriguez failed to exhaust the Plan's administrative remedies and (2) a loan request does not qualify as a "claim for benefits" under ERISA. The Court will address each claim, and each argument, in turn.

## I.      Refusal to Provide Requested Information (Claim II)

ERISA provides a private right of action to recover statutory damages from a plan administrator who either refuses to supply requested information or fails to provide an annual report in complete form. 29 U.S.C. § 1132(a)(1)(A), (c)(1). That said, an administrator need only comply with a request for information if "such administrator is required by [the relevant] subchapter to furnish" the information in question. *See id.*

### A.      Statute of Limitations

The Parties agree that a three-year statute of limitations applies to Rodriguez's claim for statutory damages under 29 U.S.C. § 1132(c)(1). *See* Mem. at 3 (citing Cal. Civ. Proc. Code § 338(a)); Opp'n at 3 (citing *Stone v. Travelers Corp.*, 58 F.3d 434, 437–38 (9th Cir. 1995)). And a claim under 29 U.S.C. § 1132(c)(1) accrues, for purposes of the statute of

limitations, where "the plaintiff knows or has reason to know of the injury which is the basis of the action." *Beserra v. Albertsons Cos.*, No. EDCV20573PSGSPX, 2020 WL 13348402, at *8 (C.D. Cal. Aug. 19, 2020) (quoting *Santoyo v. Kraft Foods Glob., Inc.*, No. 1:07CV937DLB, 2008 WL 552443, at *3 (E.D. Cal. Feb. 26, 2008)); *cf. also Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643, 649 (9th Cir. 2000) (holding, albeit with respect to a claim for denied benefits, that "an ERISA cause of action accrues either at the time benefits are actually denied or when the insured has reason to know that the claim has been denied" (citations omitted)).

### 1.    Timeliness

Where a § 1132(c)(1)(B) claim is concerned, determining the date of accrual is simple. A plaintiff has reason to know the plan administrator has denied their request for information once thirty days have passed without a response. *See, e.g.*, *Brown v. Rawlings Fin. Servs., LLC*, 868 F.3d 126, 128 (2d Cir. 2017) ("Because [§ 1132(c)(1)] required Backus as plan administrator to respond to the [July 2014] request within thirty days, Brown's claim accrued in August 2014."); *Reynolds v. Merrill Lynch Basic Long Term Disability Plan*, No. CIV. 15-00109 JMS, 2015 WL 3822319, at *2 (D. Haw. June 19, 2015) (collecting cases reaching the same conclusion).

Here, the applicable three-year statute of limitations bars claims arising out of requests submitted on or before early September 2020. Rodriguez filed suit on October 6, 2023. So, Rodriguez cannot bring § 1132(c) claims that accrued prior to October 6, 2020; i.e., claims stemming from requests for information Rodriguez submitted more than thirty days prior to October 6. Unfortunately for Rodriguez, therefore, claims arising from her March 27, 2020, April 9, 2020, or May 2020 requests are time-barred.

### 2.    Equitable Estoppel

Plaintiffs suggest that Defendants should be equitably estopped from invoking the statute of limitations defense because they allegedly assured Rodriguez—once in March and once in April—that they would provide her an "update." *See* FAC ¶¶ 17, 29. These "two years of false promises and assurances," per Plaintiffs, rendered it reasonable for

Rodriguez to (1) wait two years before asking her financial advisor to renew her request for documents and (2) wait another year and a half before filing suit.  Opp'n at 4–5.

The Court is unpersuaded.  A defendant may be equitably estopped from relying on a statute of limitations defense when it "takes active steps to prevent a plaintiff from suing on time, as by promising not to plead the statute of limitations."  *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir. 1990).  This doctrine, "sometimes called fraudulent concealment," asks whether a plaintiff actually and reasonably relied on the defendant's conduct or representations.  *Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1121–22 (9th Cir. 2006).  Here, equitable estoppel is unavailable for one simple reason—Rodriguez's alleged reliance on Defendants' promises was not reasonable.

Defendants' promises appear to have ceased in May of 2020—approximately two years before Rodriguez renewed her document request and approximately 3.5 years before Plaintiff sued.  *See* FAC ¶ 17.  The Court does not see how Defendants' initial promises of an update could have duped Rodriguez, when faced with Defendant's repeated failure to answer her May emails, into waiting multiple years before taking further action.  So, even if Defendants' assurances justified some form of equitable relief until they ceased, they do not excuse Rodriguez's post-assurance delay.  *Cf. Huseman*, 471 F.3d at 1121–22 (affirming denial of equitable tolling because the plaintiff's alleged reliance was not reasonable).

Though the Court could stop there, the Court will pause to address a common misconception apparent in Defendants' brief.  The Reply equates equitable estoppel with equitable tolling.  *See, e.g.*, Reply at 2 ("The statute of limitations applicable to the second cause of action should not be tolled." (capitalization altered)).  These two doctrines, however, are distinct.  *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008).

Plaintiffs do not here seek equitable tolling, and for good reason.  Generally, "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood

23-CV-2236 JLS (JLB)

in his way." *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (en banc) (quoting *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012)), *aff'd and remanded sub nom. United States v. Wong*, 575 U.S. 402 (2015).  The first element inquires as to "whether the plaintiff was 'without any fault' in pursuing his claim."  *Id.* (quoting *Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996)).  Here, Rodriguez does not explain why it was reasonable for her, based on assurances allegedly provided in March and April of 2020, to refrain from taking any further action until March of 2022. *See* FAC ¶ 17.  This unexplained, near two-year wait precludes equitable tolling.  *See Smith v. Davis*, 953 F.3d 582, 601 (9th Cir. 2020) (en banc) (denying equitable tolling where a habeas petitioner waited 364 days after the cessation of extraordinary circumstances to file his petition).

### 3.    *2022 Requests*

Not content to rest on their laurels, Defendants also suggest the statute of limitations bars claims arising from Rodriguez's 2022 requests.  This is true, per Defendants, because the statute of limitations for *all* requests commences thirty days from the date of the *earliest submitted* request.  Mem. at 4–5 (citing *Stone*, 58 F.3d at 439).

Here, Defendants' luck runs out.  First, though one could read *Stone* to support Defendants' contention, the court in *Stone* did not consider this specific issue.  Second, most (if not all) courts to confront this question have allowed claims stemming from later requests to proceed, even when claims associated with earlier requests are time barred.[2] Finally, the Court sees little reason to immunize a plan administrator from its continuing

---

[2] *See, e.g.*, *Brown*, 868 F.3d at 128 (setting accrual date thirty days from the plaintiff's "*last* request for information" (emphasis added)); *Beserra*, 2020 WL 13348402, at *8 (declining to apply statute of limitations despite evidence that the defendant's failure to respond began in 2003, as it was "possible that [the p]laintiff's claim relie[d] on the [d]efendants' failure to provide or denial of information within the three-year limitation period" nonetheless); *Cleary v. Boeing Co. Emp. Health & Welfare Benefits Plan (Plan 503)*, No. 11-CV-00403-WJM-BNB, 2013 WL 3943633, at *13–16 (D. Colo. July 31, 2013) (assessing merits of claims tied to later requests after dismissing claims stemming from earlier requests as time-barred).

23-CV-2236 JLS (JLB)

statutory obligation merely because it neglected that obligation in the past.  The Court will not, therefore, dismiss claims stemming from Rodriguez's 2022 requests for information as time barred.  If Plaintiffs otherwise state a claim with respect to those requests, Plaintiffs may seek statutory damages beginning thirty days from the earliest such request.

### B.    Duplicative Relief

Defendants next argue that Plaintiffs' second claim should be dismissed as duplicative of Plaintiffs' first claim.  Though the Court declines to adopt much of Defendants' reasoning, the Court agrees that Plaintiffs' second claim—at least, as currently pleaded—should be dismissed.

Plaintiffs' first two causes of action both flow from alleged violations of 29 U.S.C. § 1025(a).  *See* FAC ¶¶ 24, 28.  That statute reads, in relevant part, as follows:

> The administrator of an individual account plan . . . shall furnish a pension benefit statement . . . (ii) at least once each calendar year to a participant or beneficiary who has his or her own account under the plan but does not have the right to direct the investment of assets in that account, and (iii) upon written request to a plan beneficiary not described in clause . . . (ii).

29 U.S.C. § 1025(a)(1)(A).[3]

Plaintiffs base their first claim on Defendants' failure to provide pension benefit statements on an annual basis, FAC ¶¶ 21–26, and their second on Defendants' failure to provide those same pension benefit statements—this time, in response to Rodriguez's requests, *id.* ¶¶ 27–30.  They derive this two-pronged approach from the two-pronged remedy contained within 29 U.S.C. § 1132(c)(1).  The first cause of action stems from § 1132(c)(1)(A), which allows for statutory damages against administrators who "fail[] to meet the requirements of . . . section 1025(a)," e.g., by failing to provide pension benefit

---

[3] Per the FAC, the Plan provides individual accounts to each participant, but does not allow participants to manage the investments in those accounts.  FAC ¶ 24.  Though the FAC elsewhere suggests that the Plan is a "Defined Contribution Plan," *id.* ¶ 6, Paragraph 24 appears to clarify that the Plan is an individual account plan.

statements on an annual basis.  29 U.S.C. § 1132(c)(1)(A).  The second, by contrast, flows from § 1132(c)(1)(B), which provides for identical statutory damages against administrators who "fail[] or refuse[] to comply with a request for any information which such administrator is *required by this subchapter*[4] to furnish to a participant or beneficiary"  *Id.* § 1132(c)(1)(B) (emphasis added).  Per Plaintiffs, because § 1025(a) requires Defendants to provide pension benefit statements, and Rodriguez requested those statements, Defendants are liable under subsection (c)(1)(B) in addition to subsection (c)(1)(A).

Plaintiffs' theory begs a crucial question—is a plan administrator required, by § 1025, to provide a pension benefit statement *upon request*?  *Cf. Michael v. La Jolla Learning Inst., Inc.*, No. 17-CV-934 JLS (MDD), 2018 WL 11483057, at *4 (S.D. Cal. June 21, 2018) (dismissing the plaintiff's § 1132(c)(1)(B) claim because the regulation upon which the plaintiff relied "does not expressly provide a right for a participant to request information").  Plaintiffs derive their right to request, without analysis, from § 1025.  This derivation does not withstand scrutiny.

The plain text of § 1025 does not require Defendants to provide pension benefit statements whenever requested.  True, § 1025 creates such a requirement respecting participants in *defined benefit plans*.  *See* 29 U.S.C. § 1025(a)(1)(B)(ii) (requiring administrators to furnish a pension benefit statement "to a participant or beneficiary of the plan upon written request"); *Bafford v. Admin. Comm. of Northrop Grumman Pension Plan*, 101 F.4th 641, 650–51 (9th Cir. 2024).  But where individual account plans such as Rodriguez's are concerned, an administrator need only provide pension benefit statements "upon written request to a plan beneficiary *not described in clause (i) or (ii)*."  29 U.S.C. § 1025(a)(1)(A)(iii) (emphasis added).  And, unfortunately for Rodriguez, she qualifies as a clause (ii) beneficiary, i.e., someone "who has . . . her own account under the plan but does not have the right to direct the investment of assets in that account."  *Id.*

---

[4] The relevant subchapter includes 29 U.S.C. § 1025.

§ 1025(a)(1)(A)(ii); FAC ¶ 24.  So, § 1025 only entitles Rodriguez to a pension benefit statement once annually—not whenever she requests one.

Section 1025(b) reinforces this understanding.  It imposes a "[l]imitation on [the] number of statements" clause (a)(1)(A)(iii) and (b)(1)(B)(ii) plan participants may receive upon request—"[i]n no case . . . more than [one] statement . . . in any [twelve]-month period."  29 U.S.C. § 1025(b).  This limitation demonstrates that § 1025's "upon written request" subsections were not intended to provide a free-floating right to request pension benefit statements, but instead to ensure that all participants receive a pension benefit statement at least once each calendar year.  Because § 1025(a)(1)(A)(ii) guarantees this right for Rodriguez, she does not need—and therefore the statute does not grant her—the ability to secure pension benefit statements upon request.

Plaintiffs respond only that their § 1132(c)(1)(B) claim should survive because Federal Rule of Civil Procedure 8(a)(3) allows them to plead inconsistent theories in the alternative.  In so arguing, Plaintiffs fail to recognize the nature of their claim's flaw.  Their claim does not fail because it conflicts with another claim; instead, it fails because it relies on a theory belied by the relevant statutory language.

As § 1025 does not require plan administrators to furnish pension benefit statements to participants *upon request*—and the FAC references no other provisions within the relevant Subchapter as a source for such a requirement—the Court will dismiss Plaintiffs' second cause of action for failure to state a claim under which relief may be granted.[5,6]

///

---

[5] The Parties spill considerable ink discussing whether Plaintiffs' second cause of action survives based on 29 U.S.C. § 1024(b)(4).  *See* Mem. at 7–10; Opp'n at 7–8.  It is axiomatic, however, that a brief in opposition cannot amend a complaint.  *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020).  And here, the FAC relies solely on 29 U.S.C. § 1025 to support its second cause of action.  FAC ¶ 28.  If Plaintiffs indeed wish to bring a cause of action based in § 1024(b)(4), they must amend their pleading to incorporate that theory.  Defendants may then renew any arguments for dismissal grounded in § 1024(b)(4).

[6] As the Court dismisses Plaintiffs' second cause of action on this ground, it need not address whether allowing Plaintiffs' second cause of action to proceed would enable impermissible double recovery.

23-CV-2236 JLS (JLB)

### C.   Written Authorization

Defendants' final argument with respect to claim two focuses on requests made by Kolodi—Rodriguez's financial advisor.   Section 1132(c)(1)(B), when articulating its disclosure-upon-request requirement, refers only to the "requesting participant or beneficiary."   29 U.S.C. § 1132(c)(1)(B).   So, per Defendants, a plan administrator need respond only to requests made by participants or beneficiaries—not by persons, like financial advisors, who happen to represent plan participants.   Defendants thus suggest Plaintiffs cannot state a claim with respect to Kolodi's requests unless they allege Kolodi submitted written authorization to act on Rodriguez's behalf.

Defendants' argument appears to present an issue of first impression in the Ninth Circuit.   Many courts analyzing a similar question, however, have coalesced around the following view: plan administrators must respond to requests made by participants, beneficiaries, or their attorneys, but need not answer requests by other third parties unless accompanied by written authorization.[7]   District courts that have adopted this approach dismiss complaints that fail to allege the requesting third party submitted a signed authorization.[8]   In the Court's view, however, this approach requires some important modifications.

---

[7] *See Anderson v. Flexel, Inc.*, 47 F.3d 243, 249 (7th Cir. 1995) (concluding the defendant "did not have to respond" to a request made by a beneficiary's family member, but recognizing a presumption that an attorney "has the authority to act on behalf of the person he represents"); *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 77 (3d Cir. 2001) (recognizing that a plan administrator bears no duty to respond to a document request submitted by a third party, but creating an exception for requests submitted by an attorney "when the administrator has no reason to question the attorney's authority"); *Moothart v. Bell*, 21 F.3d 1499, 1503 (10th Cir. 1994) ("An attorney . . . is entitled to request plan information on behalf of the participant if the request is clear and puts the administrator on notice of the information sought.").

[8] *See Barix Clinics of Ohio, Inc. v. Longaberger Fam. of Cos. Grp. Med. Plan*, 459 F. Supp. 2d 617, 625 (S.D. Ohio 2005) ("[I]t would be unfair to penalize an administrator for failing to disclose plan documents to a third party who has not informed the administrator of its status as an assignee and putative beneficiary."); *Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*, No. 10-81589-CIV, 2013 WL 149356, at *11 (S.D. Fla. Jan. 14, 2013) (finding the plaintiffs "fail[ed] to state a plausible claim . . . under § 1132(c)(1)([B])" because the plaintiffs did not make a request "supported by a signed authorization from the relevant patient(s)"); *Outpatient Specialty Surgery Partners, Ltd. v. Unitedhealthcare Ins. Co.*, No. 4:15-CV-2983, 2016 WL 3467139, at *7 (S.D. Tex. June 24, 2016) (similar).

23-CV-2236 JLS (JLB)

Allowing plan administrators to entirely ignore document requests conflicts with the purpose underlying ERISA's disclosure requirements.  In *Bartling v. Fruehauf Corp.*, the Sixth Circuit initially upheld plan administrators' right to refuse to disclose any documents—even to attorneys—absent written authorization from a participant or beneficiary.  29 F.3d 1062, 1072 (6th Cir. 1994).  Eleven years later, however, the Sixth Circuit substantially cabined *Bartling*, for reasons that are worth reproducing in substantial part:

> As the Supreme Court noted in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (quoting H.R.Rep. No. 93–533, p. 11 (1973)), "Congress' purpose in enacting the ERISA disclosure provisions" was to "ensur[e] that 'the individual participant knows exactly where he stands with respect to the plan.'" . . .
>
> In *Bartling*, we held that a plan administrator could not be required under 1024(b) of ERISA to disclose pension benefit information to a non-participant (even the attorney of a participant) without first receiving written authorization from the participant.  29 F.3d at 1072.  We note that the factual circumstances of *Bartling* are quite different from those presented by this case, principally because the actions of the defendant in *Bartling* can be described as forthright and non-evasive.  In *Bartling*, after receiving an attorney request for pension benefits information on behalf of several participants, the defendants furnished much of the information requested . . . .  At the same time, the defendants informed plaintiff's counsel that individual benefits computations would not be provided without authorizations from the plan participants. . . .  *Bartling* affirmed the right of the plan administrator to seek a written authorization whenever any non-participant, even a participant's attorney, requested benefits information.
>
> In contrast to the behavior of the defendant in *Bartling*, Glidden's handling of the request by Murphy's attorney . . . can only be described as entirely inappropriate.  Glidden did not inform Murphy's attorney that the information would not be provided without a signed authorization; rather, it simply ignored the request for almost four months.
>
> Pension plan administrators who treat our decision in *Bartling* as a license to simply disregard a written request for

pension benefits information . . . both misconstrue the holding of that case and misunderstand their obligations under ERISA. Again, ERISA disclosure requirements exist to help ensure that participants have access to information about their pension plans. As the Third Circuit has cogently observed, "the objective of [the ERISA disclosure requirements] would be ill served . . . by permitting administrators to refuse to respond with no indication that authori[zation from the participant] is even an issue." *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 77 (3rd Cir. 2001).

What *Bartling* says is that a plan administrator may require written authorization from a plan participant before satisfying a non-participant's request for benefits information. Not inconsistent with that rule, we hold that a plan administrator is *not entitled to ignore* a request for pension benefits information made by an attorney on behalf of a participant . . . . Instead, a plan administrator must either provide the requested information directly to the plan beneficiary [or] inform the attorney that the information will be released upon the receipt of an authorization signed by the plan participant.

*Minadeo v. ICI Paints*, 398 F.3d 751, 757–58 (6th Cir. 2005) (footnotes omitted and emphasis added). The Court finds *Minadeo* persuasive and extends it to requests made by a financial advisor.

To be sure, *Minadeo* involved a request made by an attorney. *Id.* But *Minadeo*'s logic applies with equal force to requests made by non-attorney third parties—particularly, those with a plausible relationship to a plan participant.[9] *See id.* n.4 ("[T]he purposes of ERISA are not served when a plan administrator simply ignores a *non-participant's* request for information, without asking for an authorization to be provided." (emphasis added)).

---

[9] The Court is not inclined to engage in attorney exceptionalism when defining an ERISA plan administrator's disclosure obligations. True, attorneys (1) must be admitted by state bars, (2) are bound to comply with ethical codes, and (3) serve as their clients' fiduciaries. But many financial advisors are subject to similar commitments. *See, e.g.*, *SEC v. Duncan*, No. 3:19-CV-11735-KAR, 2021 WL 4197386, at *1 (D. Mass. Sept. 15, 2021) ("[The d]efendant had fiduciary obligations to his clients that were mandated by the SEC and by Ausdal's Compliance Policies & Procedures Manual and Code of Ethics."). If plan administrators must respond to requests from the former, they should also respond to requests from the latter.

There is a world of difference between empowering plan administrators to deny potentially suspect requests and granting plan administrators license to entirely ignore potentially meritorious requests.  Though Defendants seek a holding that would allow the latter, the Court will not acquiesce.  Instead, the Court holds as follows: plan administrators need not provide documents absent written authorization.  But if they completely ignore a request for information made by a financial advisor on a participant's behalf, they risk § 1132(c) statutory damages.

The Court is not concerned this holding will subject plan administrators to a flood of statutory damages.  This is true for one simple reason—statutory damages under 29 U.S.C. § 1132(c)(1)(B) may be imposed only at the discretion of the presiding court. *See, e.g.*, *Brooks v. Metrica, Inc.*, 1 F. Supp. 2d 559, 568 (E.D. Va. 1998) ("Once it is determined that a defendant has violated the strictures of ERISA, the amount of the statutory penalty to be imposed, *if any*, is left to the discretion of the court." (emphasis added)); *Paris v. F. Korbel & Bros.*, 751 F. Supp. 834, 840 (N.D. Cal. 1990) (noting courts may reduce statutory damages based on "mitigating factor[s]" such as "good faith" and "lack of actual harm").  If indeed a plan administrator declines to answer a third-party's request in good faith, the reviewing court can take that into account.

With the applicable standard determined, the Court turns to Plaintiffs' allegations.  The FAC states that Rodriguez authorized Kolodi to "request account statements from . . . Defendants," that Kolodi "made numerous requests and demands for information from . . . Defendants," and that "no information was ever provided."  FAC ¶ 18.  Plaintiffs nowhere allege (1) that Kolodi submitted to Defendants a written authorization to act on Rodriguez's behalf nor (2) that Defendants ignored Kolodi's requests.  Absent allegations such as the above, Plaintiffs have not stated a claim under 29 U.S.C. § 1132(c)(1)(B) with respect to Kolodi's requests.

### D.    *Individual Defendants*

"Under 29 U.S.C. § 1132(c), only the plan 'administrator' can be held liable for failing to comply with . . . reporting and disclosure requirements."  *Cline v. Indus. Maint.*

23-CV-2236 JLS (JLB)

*Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000) (citing *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 299 (9th Cir. 1989)).  Relying on *Cline*, Defendants contend the only proper defendant here is the Committee—not its members.  Defendants thus ask the Court to dismiss Hester and Hester-Wake from the action.

Plaintiffs respond that because Hester and Hester-Wake "have been the point of contact for Plaintiffs to answer questions regarding the Plan and present themselves as being in control of the Plan's financial affairs," they believe Hester and Hester-Wake are "the actual or de facto Plan administrator[s]."  Opp'n at 10.  Plaintiffs, however, cite no authority in support of their position.  *Id.*

Hester and Hester-Wake do not qualify as plan administrators under ERISA.  A plan's "administrator" is, at first blush, "the person specifically so designated by the terms of the instrument under which the plan is operated."  *Moran*, 872 F.2d at 299 (quoting 29 U.S.C. § 1002(16)(A)).  Other persons can qualify as an administrator only if (1) "an administrator is not so designated" and/or (2) "a plan sponsor cannot be identified."  *Id.* (quoting 29 U.S.C. § 1002(16)(A)).  The Court, moreover, must rigidly adhere to this statutory definition; the Ninth Circuit limits administrator liability "to the targets expressly identified by Congress in Section 1002(16)."  *Id.*  Because § 1002(16)(A) contemplates that a plan will have only one administrator—and here, Plaintiffs allege that the Committee is said administrator, FAC ¶ 6—Hester and Hester-Wake do not qualify as plan administrators.  Therefore, Plaintiffs cannot hold Hester or Hester-Wake liable under § 1132(c).

Plaintiffs' "de facto administrator" theory cannot salvage their case.  Though the First and Eleventh Circuits recognize such a theory, *see Law v. Ernst & Young*, 956 F.2d 364, 374 (1st Cir. 1992); *Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 824 (11th Cir. 2001), those cases cannot be reconciled with *Moran*.  *See Rodriguez v. Reliance Standard Ins. Co.*, No. C 03-04189 CRB, 2004 WL 2002438, at *2–3 (N.D. Cal. Sept. 8, 2004) (distinguishing *Law* and *Hamilton* and noting their holdings are inconsistent with both *Moran* and the approaches of the Sixth, Fourth, and D.C. Circuits); *Talbot v. Reliance*

23-CV-2236 JLS (JLB)

*Standard Life Ins. Co.*, 790 F. App'x 129, 130 (9th Cir. 2020) ("[T]his court has long rejected Talbot's theory that RSLIC can be deemed a de facto administrator." (citing *Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 945 (9th Cir. 2008))). So, it matters not whether Hester or Hester-Wake engaged in conduct one might expect from a plan administrator.

This conclusion, however, does not justify dismissing Hester and Hester-Wake from the action. At risk of spoiling what lies ahead, Plaintiffs' third cause of action relies on 29 U.S.C. § 1132(a)(3), the plain text of which does not limit liability to administrators. As Defendants have not argued that Hester and Hester-Wake are improper defendants under this separate provision, Hester and Hester-Wake will remain in the action.

## II. Improper Denial of Benefits (Claim III)

In their third claim, Plaintiffs contend that by failing to respond to Rodriguez's loan request, Defendants violated two statutory provisions. Plaintiffs first note that 29 U.S.C. § 1133(1) requires plans to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied." Second, Plaintiffs contend Defendants' radio silence violated 29 U.S.C. § 1133(2), which mandates that plans give participants a reasonable opportunity to appeal benefits denials. Defendants object to this cause of action on three grounds, which the Court will address *seriatim*.

### A. Independent Cause of Action

Defendants first argue that because 29 U.S.C. § 1133 "does not act as a civil enforcement section," "Plaintiffs' third cause of action is improperly brought." Mem. at 10. Defendants are correct that § 1133 does not contain a private right of action. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990) (emphasizing 29 U.S.C. § 1132(a) constitutes "the exclusive remedy for rights guaranteed under ERISA."). Defendants fail to recognize, however, that 29 U.S.C. § 1132(a)(3) allows a plan participant or beneficiary to "enjoin any act or practice which violates any provision of [Subchapter I]," to "obtain other appropriate equitable relief" to "redress such violations," or "to enforce any provisions of [Subchapter I]." As 29 U.S.C. § 1133 falls within

17

Subchapter I, Plaintiffs may sue to require Defendants to comply with § 1133's requirements. *See Downtown L.A. Ambulatory Surgical Ctr., LLC v. Conn. Gen. Life Ins. Co.*, No. CV183592DMGAGRX, 2019 WL 2902493, at *4 (C.D. Cal. Mar. 29, 2019). Defendants' first argument thus does not justify dismissal.

### B.   Administrative Exhaustion

Defendants' next contention can be dispensed with easily. Defendants argue that "Rodriguez has . . . failed to exhaust all available administrative remedies under the Plan prior to bringing the third cause of action." Mem. at 11. But where a plaintiff files "a timely claim under 29 U.S.C. § 1132(a)(3) to enforce the notification and review requirements of § 1133," "the exhaustion of internal dispute procedures [is] not . . . required." *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1035 (9th Cir. 2006). Plaintiffs' third cause of action belongs in federal court.

### C.   Is a Loan a "Benefit?"

Finally, Defendants argue that a loan request is not a claim for benefits under ERISA. Per Defendants, Rodriguez can only seek "unpaid or owing employee or employer 'contributions' []or 'assets'," not loans. Mem. at 10–11.

Defendants' argument is remarkably underbaked. They (1) cite no statutory or regulatory provision adopting the narrow definition of "benefits" that they propose and (2) present no precedent that directly supports their understanding.[10] Though Defendants rely on *Leister v. Dovetail, Inc.*, that case found only that with respect to a specific 401(k) plan, the plaintiff's "benefits" were "the assets that would have been in her 401(k) account." 546 F.3d 875, 881 (7th Cir. 2008). It nowhere held that ERISA's definition of "benefits" is limited solely to assets or contributions.

Instead, both the plain meaning of the term "benefit" and ERISA's statutory provisions suggest that loans can qualify as benefits if the relevant plan so provides. First, ERISA expressly allows covered plans to make loans to participants or beneficiaries.

---

[10] ERISA does not expressly define "benefit." *See* 29 U.S.C. § 1002.

29 U.S.C. § 1108(b)(1). Second, ERISA's enforcement provision, when discussing "benefits," refers to "the terms of [the participant's] plan." 29 U.S.C. § 1132(a)(1)(B). Finally, Merriam-Webster defines "benefit," in relevant part, as "financial help in time of sickness, old age, or unemployment," "a payment *or service* provided for under an annuity, pension plan, or insurance policy," or "a *service* (such as health insurance) or right (as to take vacation time) provided by an employer in addition to wages or salary." *Benefit*, Merriam-Webster, https://www.merriam-webster.com/dictionary/benefit (last visited July 11, 2024) (emphasis added). It follows that a "benefit," where ERISA is concerned, is a payment or service (such as a loan) to which plan participants are entitled based on their plan's terms.

That leaves but one question: does the Plan entitle its participants to loans? Defendants suggest it does not. At this stage, however, it is not Defendants' suggestions that matter, but instead the FAC's allegations. And the FAC could not be more clear: "Pursuant to the terms of the Plan, loans are available to Participants. The Plan sets forth the procedure for claiming such benefit, which includes submitting a written request for the loan." FAC ¶ 34. Plaintiffs have thus plausibly alleged that Defendants violated 29 U.S.C. § 1133 by failing to respond to Rodriguez's loan application.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss (ECF No. 21). The Court **DISMISSES** Plaintiffs' second cause of action for failure to state a claim. Defendants' Motion is otherwise **DENIED.**

If Plaintiffs believe that they can, consistent with this Order, supplement their second cause of action such that it states a claim, Plaintiffs **MAY FILE** an amended complaint within <u>fourteen (14) days</u> of the date of this Order.

/ / /

/ / /

/ / /

/ / /

If Plaintiffs so file, Defendants **SHALL RESPOND** within the time set by Federal Rule of Civil Procedure 15. If Plaintiffs elect not to file an amended complaint, however, Defendants' answer is due <u>fourteen (14) days</u> from the expiration of Plaintiffs' deadline.

**IT IS SO ORDERED.**

Dated: July 17, 2024

Hon. Janis L. Sammartino
United States District Judge

23-CV-2236 JLS (JLB)